Reese, J.
delivered-the opinion of the court.
In 1839, the late Joseph H. ’Bryan, of Fayette county, then in life -and on a visit to Raleigh, N. C., gave his bond to his nephew, the defendant, binding himself in the penalty of ten thousand dollars, to convey to him six hundred and forty acres of land in a body, being part of a fourteen hundred acre tract, including the improvements on section 15; and also certain mills upon a small portion of land- in the neighborhood of the *128 same, all lying in the State of Mississippi; on the condition that he would remove from Raleigh, N. C., to La Grange or its neighborhood. Before Bryan returned from N. Carolina complainant, acting as his agent, contracted to sell section 15, including said improvements, to some persons by the name of Davis, subject, as the bill says, to the ratification of Bryan on his return. In December, 1889, Outlaw moved out, bringing with him his family and slaves; and the section 15 being contracted as aforesaid, to be sold, he was requested by Bryan to examine section 14, adjoining, and being satisfied therewith, under the circumstances, the defendant settled thereon under a parol or verbal agreement, that it was to be conveyed to him instead of sec. 15. In December, 1839, Bryan died intestate, leaving the wife of complainant, as his only heir at law, and a widow surviving, complainants in this bill. Jesse Isler, the son-in-law, administered upon the estate of Bryan, and he, his wife and the widow executed to the Davises a bond to convey title to part of sec. 15, and to one Yancy for another part. They •did not offer to convey sec. 14 to the defendant. On the contrary, the silence of the bill, the allegations of the answer, and the proof in the cause, make it apparent, that they refused to convey sec. 14 to the defendant upon his special application to that 'end. In this state of things, defendant, on the 14th April, 1841, brought his action at law upon the bond against complainant, ;as the administrator of Bryan. Complainant sought to avoid the validity of the bond by the plea of lunacy of his intestate at the time of its execution. This was the only plea. A. verdict was found for the defendant in the bill. The plaintiff at law ■upon this issue, had his damages ascertained and assessed, and judgment thereon rendered. In September, 1841, Isler procured Yancy to release to him-, (Isler,) not to the 'heirs, the title bond,given by Isler to Yancy for four hundred acres o'f sec. 15, and about that time offered to defendant to make a deed for 'that section, which was refused. This bill is filed to enjoin the judgment at law, and compel the acceptance of a deed for the 15th section, upon the general ground, that a Court of Chancery looks at the substance of the contract, as being for land, and will not subject them to pay the money rather than the land, *129 unless on the ground of wrong or fault. It would not be contended, perhaps, that if Bryan had lived, had contracted to convey lot 15 to others, had made a parol agreement with defendant for lot 14, and refused after defendant had made considerable improvement to convey lot 14, had finally been sued upon the bond at law, had pleaded non est factum, had resisted a recovery, and finally a recovery being had upon the bond at law, had then filed his bill for a specific execution of the contract; it would hardly be contended by any one, that a Court of Chancery, under such circunistances,.would decree in his behalf the specific execution of the contract. And yet this case is identical with that. There is but one heir at law, who is actually represented by complainant,'her husband, and he too is the administrator. He combines in himself all the interests real and personal of Bryan, as he- would have himself have done in the case supposed. Now, legatees under a will; or distributees in case of intestacy, would often be able in a Court of Chancery to throw off from the fund claimed by them, the burthen of a judgment at law obtained for a breach of coyenant to convey land, and impose it upon the heirs, by compeling a specific execution of the contract of purchase. But, here, after the death of Bryan, all the parties in interest, surviving, joined in a bond to Yancy; all joined in refusing a conveyance for lot 14; and all joined no doubt in the vigorous resistance of the suit at law. Indeed there is much reason to infer from the order and sequence of events in the case, that before Bryan’s return the contract of sale with Davis was made by Isler with the express view of defeating the purposes of Bryan and the claims of Outlaw as to lot 15.. And the same active exertions of the parties in interest after the death of Bryan to baffle and defeat the claim of Outlaw, seems to have been made.
These circumstances, then, combined with the further fact, that the land has greatly diminished in value, and that it lies out of the State, and beyond its jurisdiction, makes it, in our opinion, a plain case, for refusing the active interposition of a Court of Chancery to decree the acceptance of tide to lot No. 15. The decree of the Chancellor will be affirmed.